TAX COLLECTOR OF BRAINTREE *vs.* J.G. GRANT & SONS, INC.

No. 87-1358.

Norfolk.   October 18, 1988. — January 3, 1989.

Present: ARMSTRONG, CUTTER, & KASS, JJ.

*Practice Civil,* Action transferred to District Court; Appellate Division: appeal. *Taxation,* Personal property tax: abatement, exemption; Abatement; Value; Void tax; Classification amendment. *Value. Jurisdiction,* Administrative matter, Tax. *Administrative Law,* Exhaustion of remedies. *Words,* "Classification."

A party in a civil action that was commenced in the Superior Court and transferred for trial to the District Court pursuant to G. L. c. 231, § 102C, need not seek a report of questions of law involving no dispute of fact to the Appellate Division of the District Court Department before having the case transferred to the Superior Court pursuant to G. L. c. 231, § 102C, third par. [733]

A taxpayer may raise the defense of the exempt status of his property under G. L. c. 59, § 5, Sixteenth (2), in a responsive pleading to a tax collector's complaint under G. L. c. 60, § 35. [734-737]

CIVIL ACTION commenced in the Superior Court Department on June 28, 1984.

After transfer to the Quincy Division of the District Court Department and retransfer to the Superior Court Department, the case was heard by *James F. McHugh,* J., on motions for summary judgment.

*Richard F. Kerr* for the taxpayer.

*William F. Carr,* Assistant Town Counsel, for the Tax Collector of Braintree.

KASS, J.  Not until the tax collector brought an action under G. L. c. 60, § 35, did the taxpayer, J.G. Grant & Sons, Inc. (Grant), raise the defense that the property assessed was exempt from taxation. The major question on appeal is whether the defense of exemption lies as a response to a collector's action under § 35 or whether the issue of exemption must be raised at

an earlier stage through the tax abatement process under G. L. c. 59, § 59, or through an action under G. L. c. 60, § 98, to recover a tax paid under written protest. There is a secondary, but threshold, procedural question.

Grant operates a construction equipment rental business in Braintree. The town first began to assess Grant's personal property in 1981, and continued to do so in 1982 and 1983. We know nothing about subsequent years. Grant cheerfully ignored the tax bills in question. It did not, pursuant to G. L. c. 59, § 29, list its property with the town; it did not seek an abatement; and it did not pay the taxes. Indeed, Grant did not respond to a written warning from town counsel of the commencement of legal action. Not until the tax collector actually commenced an action in Superior Court did Grant first claim that the tax was unlawfully assessed because the personal property in question was exempt from taxation under G. L. c. 59, § 5, clause Sixteenth (2), as "stock in trade."

Inclusive of interest and costs, the amount claimed by the town was $22,531.26, i.e., under the $25,000 amount within which the Superior Court may transfer a civil case to the District Court under G. L. c. 231, § 102C, as amended by St. 1986, c. 278, § 1. Such a transfer occurred when, some two and one-half years after the action began, the town moved for a speedy trial. After trial, a District Court judge entered a finding "for the Defendant J.G. Grant & Sons, Inc." It appears that the only issues disputed in the District Court were whether the taxpayer could raise the exempt status of the personal property as a defense and, if so, whether that property was exempt from taxation.[1] The import of the District Court "finding" was that the defense was, indeed, available and that the heavy construction equipment in question was exempt from taxation under G. L. c. 59, § 5, Sixteenth (2).

---

[1] Another defense obliquely adverted to in the taxpayer's trial memorandum was that, as the taxpayer did not file a list of the equipment it held for rental purposes pursuant to G. L. c. 59, § 29, the town was without power to tax that equipment. This defense was crisply rejected in the Superior Court judge's memorandum of decision as, in effect, requiring tax collectors to solicit voluntary contributions. We read no more of this in the taxpayer's brief on appeal.

Aggrieved, the tax collector exercised his right to have the case retransferred to the Superior Court. G. L. c. 231, § 102C, third par. There each party moved for summary judgment, the Superior Court judge granted the town's motion, and judgment entered for the tax collector.

1. *Questions of law open on retransfer.* Relying on *Lubell* v. *First Natl. Stores, Inc.*, 342 Mass. 161, 164-165 (1961), the taxpayer argues that the Superior Court lacked jurisdiction to consider the principal question of law disputed in the Superior Court, viz., whether exempt status could be raised as a defense to a collector's action, unless that question had first been reported to the Appellate Division of the District Court. It was held in *Lubell* that rulings of law as to the admissibility of evidence or the sufficiency of evidence, i.e., rulings which were of a mixed fact and law nature, should be disposed of by the Appellate Division, if such disposition were sought. *Id.* at 165-166. The court in *Lubell* reasoned that, as the "decision" of the District Court under G. L. c. 231, § 102C, had prima facie force upon retransfer to the Superior Court, it was important that the factual components of the record, to the extent they might be the product of errors of law, be corrected.

No such problem of repairing the record pertains to the instant case. As put before the Superior Court, the case involved no dispute of fact and presented only a question of law. There was no need to review the *record* in the District Court. Contrast *Methuen Constr. Co.* v. *J & A Builders, Inc.*, 4 Mass. App. Ct. 397, 399-402 (1976). Compare *Sylon Indus., Inc.* v. *Trim Knit, Inc.*, 13 Mass. App. Ct. 970, 971 (1982). The Superior Court judge would have been in a position on retransfer to review a determination of law by the Appellate Division in any event. *Henry* v. *Mansfield Beauty Academy, Inc.*, 353 Mass. 507, 508-509 (1968). *Harrison* v. *Textron, Inc.*, 367 Mass. 540, 553 (1975). As there was no need to review a record, but only a determination of law, it was appropriate and in the interests of judicial economy to consider the central question directly on retransfer, without a side trip to the Appellate Division.

2. *Availability of exempt status as a defense to a tax collector's action.* The procedure of choice for challenging a tax thought by a taxpayer to be improperly assessed is the administrative path, i.e., an application for abatement under G. L. c. 59, § 59, and then an appeal to the Appellate Tax Board under G. L. c. 59, §§ 64 and 65. See *Leto* v. *Assessors of Wilmington*, 348 Mass. 144, 148-149 (1964); *Sears, Roebuck & Co.* v. *Somerville*, 363 Mass. 756, 758 (1973); *Sydney* v. *Commissioner of Corps. & Taxn.*, 371 Mass. 289, 294 (1976); *General Dynamics Corp.* v. *Assessors of Quincy*, 388 Mass. 24, 28-30 (1983); *Boston* v. *Second Realty Corp.*, 9 Mass. App. Ct. 282, 283-284 (1980). Nichols, Taxation in Massachusetts 321-322 (3d ed. 1938). Among the reasons which those cases offer for that preference is the specialized knowledge of State and local taxation which the board can bring to bear; the capacity of the board to establish a readily accessible body of precedents to guide taxpayers and taxing authorities; the notice of challenge and the cash flow to taxing authorities which are inherent in the timing prescriptions of § 59; the possibility before the board of consolidation of similar cases within a single community; and the very fact that the Legislature established a specific administrative tribunal for the resolution of State and local tax controversies.

If the taxpayer's grievance is that the tax is excessive, relief through application for abatement and petition to the Appellate Tax Board has been described as not just the desired remedy but the only one. *Hairenik Assn., Inc.* v. *Boston*, 313 Mass. 274, 278 (1943). *Norwood* v. *Norwood Civic Assn.*, 340 Mass. 518, 523 (1960). *Sears Roebuck & Co.* v. *Somerville*, 363 Mass. at 758. Indeed the words "exclusive remedy" have been invoked. *Ibid.* See cases collected in *D'Errico* v. *Assessors of Woburn*, 384 Mass. 301, 306 (1981). Exclusivity, however, has taken on a paradoxically relative character, even in valuation cases. Should the administrative remedy be "seriously inadequate," or the case involve novel questions, repetitive problems, or the public interest, resort to the Superior Court has been grudgingly countenanced. *Sydney* v. *Commissioner of Corps. & Taxn.*, 371 Mass. at 294-295. *General Dynamics*

*Corp.* v. *Assessors of Quincy*, 388 Mass. at 28-30. *I.S.K. Con of New England, Inc.* v. *Boston*, 19 Mass. App. Ct. 327, 330 (1985). Compare *Curran* v. *Commissioner of Rev.*, 23 Mass. App. Ct. 965, 966 (1987). Use of the courts is, however, a course looked upon with disfavor. *General Dynamics Corp.* v. *Assessors of Quincy*, 388 Mass. at 30.

When the taxpayer's contention is that the tax assessed is void, i.e., that the particular tax assessed ought not, as matter of law, to be assessed at all, it is quite acceptable to put the declaratory judgment statute in play. See, e.g., *Stow* v. *Commissioner of Corps. & Taxn.*, 336 Mass. 337, 339-340 (1957); *Massachusetts Assn. of Tobacco Distribs.* v. *State Tax Commn.*, 354 Mass. 85, 87-88 (1968). It is also open to the taxpayer in such circumstances to pay the tax under protest and within three months to bring an action under G. L. c. 60, § 98, to recover the amount paid. *Norwood* v. *Norwood Civic Assn.*, 340 Mass. at 523. *Sears, Roebuck & Co.* v. *Somerville*, 363 Mass. at 757-758. *Bordeau* v. *Registrar of Motor Vehicles*, 373 Mass. 429, 434-435 (1977). Nichols, *supra* at 444-445.

In the instant case the taxpayer used none of the three methods of challenge we have discussed. Rather, the taxpayer adopted a "come and get me" position. It is a posture which has the disadvantage of outflanking the normal administrative process (this is not an extraordinary case), failing to notify the taxing authority that a taxing method is challenged, and evading the payment requirements of c. 59. Yet the cases which have raised the point, directly or inferentially, permit the defense of "void tax," which includes assessing a tax against tax-exempt property, to be raised by way of responsive pleading to a collector's action under G. L. c. 60, § 35. *Tobey* v. *Kip*, 214 Mass. 477, 478 (1913) ("If the tax in question was, as the defendant contends, illegal and void, we do not doubt that this defense is available to him in the present action"). *Wynn* v. *Assessors of Boston*, 281 Mass. 245, 248-249 (1932) (recognizes "the defence of illegality of a tax to an 'action' for its collection"). *Collector of Taxes of Boston* v. *Cigarette Serv. Co.*, 325 Mass. 162, 163 (1950) (raising as a defense to a collector's action the question of exemption under G. L. c. 59,

§ 5, Sixteenth, of cigarette vending machines). *Boston* v. *Mac-Gray Co.*, 371 Mass. 825, 826-828 (1977) (raising "stock in trade" exemption under § 5, Sixteenth [2], as defense to collector's action). See Nichols, *supra* at 382-383 n.12.

The Superior Court judge thought that the enactment of St. 1978, c. 580, § 33, eradicated the force of the opinions cited in the preceding paragraph. The 1978 statute added "an improper classification" to the grounds for which municipal assessors might make an abatement.[2] "Improper classifications," the judge reasoned, applied to whether personal property ought to be treated as exempt or not exempt for tax purposes under § 5. With an administrative agency option on the books, the taxpayer, by application of familiar principles of exhaustion of administrative remedies, was bound to follow the administrative path.

The occasion, however, of the inclusion of the words "an improper classification" was comprehensive legislation (St. 1978, c. 580 [much of which was repealed but not § 33] and St. 1979, c. 797) authorizing classification of real estate for municipal tax purposes as residential, commercial, industrial, or open space.[3] See *Macioci* v. *Commissioner of Rev.*, 386 Mass. 752, 754-755 (1982). See generally, Hines, 1979 Classification Legislation, 24 Boston Bar Journal 5 (June, 1980). In its context in § 59, the word "classification" has so precise and artistic a meaning, namely the classification of real estate, that we think it incorrect to ascribe to it broader significance in the taxing statutes.

We conclude that the taxpayer here could raise the defense of the exempt status of his property under G. L. c. 59, § 5, Sixteenth (2), in a responsive pleading to the tax collector's complaint under G. L. c. 60, § 35. Summary judgment, therefore, was erroneously entered in favor of the tax collector.

---

[2] As amended, G. L. c. 59, § 59, reads "and if they [the assessors] find him [the taxpayer] taxed at more than his just proportion or upon an improper classification, or upon an assessment of any of his property in excess of its *fair cash value, they shall make a reasonable abatement.*"

[3] The classification legislation rested, in turn, on art. 112 of the Amendments to the Massachusetts Constitution.

Whether the construction equipment is exempt as stock in trade is a mixed question of law and fact. The case is remanded to the Superior Court for determination on the merits. In that proceeding, the District Court finding will be prima facie evidence on matters of fact.

*So ordered.*